are stated in the assignee's account at $1,-319 40, leaving a balance for distribution of $147 30. This result should have some influence in considering the accounts which present it. I know, indeed, how impossible it would be, in some cases, to allow a proper compensation for the services of an assignee, if such allowance were to be controlled by a commission on the amount which such services realized for distribution to creditors. That, the statute fixes by the commission which it allows upon sums collected and paid out. But the "reasonable compensation" in addition to commissions for which section 17 provides, and which is to be granted in the discretion of the court, I think should be fixed in view of all the circumstances which a prudent and intelligent business man would regard as proper to influence his action. It is difficult to see, for instance, what there was in this estate, whether as shown by the result, or as appears from any other facts set up to sustain the assignee's account, which would render it judicious to spend fifty-eight days of actual service by the assignee. And, while I think that assignees should be paid for the time necessarily devoted by them to the execution of their trusts, I think also that they should be held to some responsibility for the exercise of a reasonable judgment, as to the amount of time thus to be devoted. I think the charges by the assignee in this case were made under the impression that usage had established a per diem of five dollars as something in the nature of a statutory fee, rather than as for a compensation in each case for a service actually rendered. I concede the difficulty of prescribing a definite rule by which to settle such charges; and perhaps the greater difficulty of applying any such rule to the great variety of circumstances in each case. But I think, in this case, in view of the whole amount of the estate, as developed by the result, and of what might probably have been known about it, that one hundred and fifty dollars would be an adequate compensation for all the services really required.

As to Charges for Professional Services.—The gross amount paid by the assignee, for which he presents vouchers signed by Messrs. Dickinson & Dickinson, is $651 80. Of this $6 80 was paid for traveling expenses, $95 to register, clerk and marshal, $147 25 for fees of witnesses summoned for the trial of the suit which was compromised at the sum of $1,000, leaving the sum of $402 75 for professional services. The charge of $120 for obtaining the adjudication of bankruptcy is about double what is usually allowed for this service. The services rendered in the suit are fully set forth in the affidavit of Mr. J. G. Dickinson—they were rendered in a matter possibly within the recollection of the district judge, as the trial referred to in Mr. Dickinson's affidavit was before him sitting in the circuit court,—and therefore as to the proper allowance for these services I refrain from any recommendation.

LONGYEAR, District Judge. Assignees' Services.—As a convenient mode of getting at a proper allowance for services of assignees, an allowance by the day has usually been adopted. But this is hardly a fair mode where, as in this case, the time charged for is very large, and the estate very small. So, too, as to the per diem allowed. Five dollars is the maximum allowed in this court. It would not be reasonable to allow the highest compensation in a case like the present where the time charged for is unusually large and the estate is so small that the expenses of administration must, in any event, absorb much of the larger portion of it. Here, too, the assignee is himself a creditor, and he must submit to a sacrifice of something of his services for the common good. The opinion of the register, in its reasoning and conclusion in this regard, is approved.

Professional Services.—The usual allowance in this court for preparing petition, etc., and obtaining an adjudication when uncontested, is $50. No reason appears why more than that should be allowed in this case except for the extra services in making the necessary preliminary investigations, for which $25 additional must be allowed, making these items $75 in all, instead of $120, as charged. For services in the chancery suit $75 must be allowed instead of $100, as charged. The remaining items for professional services must stand as charged.

One of the chief reproaches brought against the bankrupt law is, that small estates are absorbed in costs and expenses; and it must be understood that when such cases are undertaken and prosecuted, charges for services will be limited to what the court considers a bare compensation, whether professional or otherwise.

### Case No. 7,452.

In re JONES et al.

[12 N. B. R. (1875) 48; [1] 7 Chi. Leg. News. 162.]

District Court, N. D. Illinois.

[1] [Reprinted from 12 N. B. R. 48, by permission.]

A. S. Bradley, for bankrupts,

W. F. Becker, for creditor,

BLODGETT, District Judge, sustained the demurrer on both points, and struck out the specifications.

## Case No. 7,453.

JONES v. AETNA INS. CO.

SAME v. INS. CO. OF NORTH AMERICA.

[7 Reporter, 644;[1] 19 Alb. Law J. 522; 8 Ins. Law J. 415.]

Circuit Court, D. Massachusetts. April 22, 1879.

[1] [Reprinted from 7 Reporter, 644, by permission.]

C. Allen, for plaintiff.

H. G. Parker and J. D. Bryant, for the different defendants.

LOWELL, Circuit Judge. Upon a review of the point, aided by the able and learned arguments on both sides, I am unable to see that the ruling was wrong. There was no question of actual fraud, or of the insolvency of either the agent or the plaintiff. and the decisions. it seems to me, make out such an exception as I referred to in the ruling. In certain classes of mercantile agencies the law founded originally in usage permits the agent to keep an account current with both sides and to settle with one of them by an offset, such as was agreed on in this case. Stewart v. Aberdein. 4 Mees. & W. 211; Catterall v. Hindle, L. R. 2 C. P. 368, 370. The power of insurance agents to make a contract of this sort is recognized in Chickering v. Globe Mut. Life Ins. Co., 116 Mass. 321, which illustrates the difference between insurance agents and partners in the point under discussion. Mississippi Valley Life Ins. Co. v. Neyland, 9 Bush. 430; Bouton v. American Mut. Life Ins. Co.. 25 Conn. 542; Post v. Aetna Ins. Co.. 43 Barb. 351. There are many cases in the supreme court as well as other courts which establish the general proposition of the plaintiff. that one who is given the powers which this agent